UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Luke Troxel, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UMR, Inc. and Quantum Health, Inc.,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT** |

## I.   INTRODUCTION

1. PrEP, or pre-exposure prophylaxis, is a pill that is 99% effective at preventing HIV when taken as prescribed. "To end the HIV epidemic in the U.S.," the CDC has urged, "the nation must ensure that people eligible for PrEP use it."[1] Access to PrEP will be critical in ending the HIV epidemic, which has claimed over 40 million lives worldwide and is far from over. In 2021, 36,136 people in the U.S. received an HIV diagnosis.

2. Recognizing the importance of prevention for diseases like HIV, Congress required most health insurance plans to provide first-dollar coverage for preventive treatment—that is, full coverage without any cost-sharing payments from the patient. Under federal law, most insurers must provide access to preventive treatment, including PrEP, without any patient cost-sharing.

---

[1] CDC, *The State of the HIV Epidemic in the U.S.* (June 23, 2022), https://www.cdc.gov/nchhstp/newsroom/fact-sheets/hiv/state-of-the-hiv-epidemic-factsheet.html#recent-progress

3. PrEP treatment includes patient counseling, lab tests, and the medication itself. The medication cannot be dispensed or refilled without counselling and lab tests every three months, as deemed necessary by the patient's provider. Defendants UMR and Quantum Health fail to provide first-dollar coverage of these preventive services.

4. UMR and Quantum's failure to cover preventive care has likely resulted in millions of dollars in unpaid benefits for insureds like Luke Troxel. UMR and Quantum administer Mr. Troxel's employer-sponsored health benefit plan and have each refused to cover preventive office visits and lab services necessary to obtain and refill his PrEP prescriptions. As a result, Mr. Troxel has incurred over a thousand dollars in charges for preventive services UMR and Quantum failed to fully cover.

5. UMR and Quantum's failure to cover preventive care services violates the Employee Retirement Income Security Act of 1974 ("ERISA") and the Patient Protection and Affordable Care Act ("ACA"). This unlawful, ongoing practice creates an additional barrier that makes it difficult for those eligible for PrEP to use it and will contribute to the spread of HIV.

6. Individually and on behalf of similarly situated enrollees in ERISA plans administered by UMR and Quantum, Mr. Troxel brings this class action under ERISA to recover benefits due to him and the class, to clarify their rights to future benefits, and to enjoin Defendants from denying first-dollar coverage for preventive services in the future.

II. PARTIES

7. Plaintiff Luke Troxel is a natural person who resides at St. Louis Park, Minnesota.

8. Defendant UMR, Inc. ("UMR") is a Delaware corporation and subsidiary of United HealthCare Services, Inc., a Minnesota corporation. UMR is a third-party administrator of employer-sponsored health plans, including Plaintiff's employer-sponsored plan.

9. Defendant Quantum Health, Inc. ("Quantum") is a Delaware corporation that is a third-party administrator of employer-sponsored health plans, including Plaintiff's employer-sponsored plan.

### III.   JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and ERISA, 29 U.S.C. § 1132(e)(1).

11. This Court has personal jurisdiction over each Defendant under ERISA's nationwide service of process provision, 29 U.S.C. § 1132(e)(2), and because each Defendant transacts business Minnesota and the benefits determinations at issue in this case establish sufficient minimum contacts with Minnesota.

12. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because each Defendant may be found in this district and administers benefits in this District.

### IV.   FACTUAL ALLEGATIONS

**Preventive Services and PrEP Coverage Under the ACA and ERISA**

13. The ACA amended the Public Health Service Act to require group health plans and health insurance issuers offering group or individual health insurance to cover preventive care services without any cost-sharing. *See* 42 U.S.C. § 300gg-13(a). The Public Health Service Act now requires first-dollar coverage, which is full coverage without cost-

sharing, of "evidence-based items or services that have in effect a rating of 'A' or 'B' in the current recommendations of the United States Preventive Services Task Force." *Id.* § 300gg-13(a)(1). Under ERISA, these requirements apply to most employer-sponsored plans. *See* 29 U.S.C. § 1185d(a)(1).

14. Certain plans, known as grandfathered plans, are exempted from the preventive care coverage requirement. All other ERISA-governed employee group health plans must cover preventive care services without cost-sharing, including self-funded employer-sponsored plans.

15. On June 11, 2019, the U.S. Preventive Services Task Force ("USPSTF") issued a Grade A recommendation for PrEP to prevent the spread of HIV for individuals at risk of HIV infection.[2]

16. Under federal regulations, non-grandfathered plans and issuers must cover PrEP for plan years beginning on or after June 30, 2020. *See* 29 C.F.R. § 2590.715-2713(b).

17. The FDA label for PrEP medication mandates that providers prescribe the drug "as part of a comprehensive prevention strategy" and "screen for HIV-1 infection at least once every 3 months."[3] Part of the required "comprehensive prevention strategy" includes patient counselling and testing for other conditions that "may facilitate HIV-1

---

[2] U.S. Preventive Services Task Force, *Prevention of Human Immunodeficiency Virus (HIV) Infection: Preexposure Prophylaxis* (June 11, 2019), https://www.uspreventiveservicestaskforce.org/uspstf/recommendation/prevention-of-human-immunodeficiency-virus-hiv-infection-pre-exposure-prophylaxis

[3] *See, e.g.*, FDA, Truvada (emtricitabine tenofovir disoproxil fumarate) Tablets Label (June 2013), https://www.accessdata.fda.gov/drugsatfda_docs/label/2013/021752s035lbl.pdf.

transmission." In order to refill a PrEP prescription, a patient must obtain counselling and lab testing services every 3 months. This complaint will describe all lab testing and office visit services required for PrEP as "PrEP Required Services." Patients are not able to refill PrEP prescriptions without first obtaining PrEP Required Services as determined by the patient's provider.

18. On July 19, 2021, the three federal agencies tasked with implementing the ACA issued guidance ("Tri-Agency Guidance") explaining how the ACA requires coverage of PrEP medication and associated services, including office visits and lab tests.[4]

19. The Tri-Agency Guidance addressed the office visit and lab services associated with a PrEP prescription by reviewing the USPSTF recommendation, which recommends related services and testing. The Guidance states that plans and issuers are required "to provide coverage without cost sharing for items or services that the USPSTF recommends should be received." This requirement applies even when the patient receives other services during an office visit: "Plans and issuers are also required to cover without cost sharing office visits associated with each recommended preventive service applicable to the participant, beneficiary, or enrollee when the service is not billed separately (or is not tracked as individual encounter data separately) from an office visit, and the primary purpose of the office visit is the delivery of the recommended preventive service."

---

[4] *See* FAQs About Affordable Care Act Implementation Part 47 (July 19, 2021), https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/Downloads/FAQs-Part-47.pdf.

20. The Guidance further notes that health plans are not permitted to use medical management techniques, such as prior authorization, to restrict the frequency of benefits for services specified in the USPSTF recommendation for PrEP.

### UMR Fails to Cover Mr. Troxel's PrEP Labs and Office Visits

21. Mr. Troxel is a participant in a non-grandfathered group health plan sponsored by his current employer and that plan is administered by UMR and Quantum. The plan gives UMR the "final, discretionary authority to determine if an initial claim is payable under the terms of the Plan." The plan gives Quantum "the final, discretionary authority to determine if a claim appeal is payable under the terms of the Plan." The plan year begins on January 1 of each year.

22. On March 4, 2021, Mr. Troxel had an office visit with his physician to discuss PrEP. His physician determined the medication was medically necessary and ordered the labs required to begin PrEP. Mr. Troxel received those lab services and subsequently received and filled a PrEP prescription.

23. Rather than provide first-dollar coverage for these services as required by law, UMR processed the claim as a covered service at an in-network level of benefits and applied a provider-negotiated discount, but paid nothing because Mr. Troxel had not met his deductible. According to UMR, Mr. Troxel was responsible for $311.65 for the medical exam plus additional charges for lab services.

24. About every three months since, Mr. Troxel has obtained PrEP Required Services necessary to refill his PrEP prescription, including labs and office visits with his physician.

25. In addition to providing first-dollar coverage for preventive care services like PrEP treatment, the ACA and ERISA require non-grandfathered health plans to provide first-dollar coverage for one preventive care visit annually. Once per year, UMR provided first-dollar coverage for Mr. Troxel's annual preventive care visit. During these visits, Mr. Troxel also received PrEP Required Services.

26. With the exception of PrEP Required Services Mr. Troxel received at his annual preventive visit, UMR has failed to provide first-dollar coverage for PrEP Required Services about every three months since March 2021. The medical documentation for each of these visits, which indicate the PrEP medication was refilled, clearly demonstrates the services were PrEP-related and, therefore, preventive in nature.

27. Mr. Troxel maintains a PrEP prescription and continues to receive PrEP Required Services on a regular basis, about every three months.

28. Most recently, Mr. Troxel received PrEP Required Services on July 20, 2023.

29. UMR covered the full cost of PrEP Required Services Mr. Troxel received on July 20, 2023. The Explanation of Benefits did not explain why those services were covered.

30. Mr. Troxel's present intention is to maintain his existing coverage through his employer.

31. To date, Mr. Troxel has incurred over $1,000 in charges from his provider as a direct result of UMR's failure to provide first-dollar coverage for PrEP Required

7

Services. His provider has billed him for these services and asserts that he owes those amounts.

### UMR and Quantum Disregard the Law On Appeal

32. When Mr. Troxel first became aware of UMR's legal obligation to provide first-dollar coverage for PrEP Required Services, he contacted Quantum, a so-called "care coordinator" and third-party administrator with authority to decide claim appeals.

33. Mr. Troxel provided information demonstrating that PrEP Required Services are preventive and must be covered without cost-sharing, including citations to the ACA and the Tri-Agency Guidance.

34. Quantum staff did not dispute that PrEP Required Services are preventive or that preventive services are required to be covered without cost-sharing. But rather than reversing the unlawful claims decisions, Quantum staff told Mr. Troxel his provider had coded the services incorrectly.

35. Based on Quantum's statements, Mr. Troxel contacted his provider's office who performed a code review and determined that they had, indeed, coded the services accurately. The codes were reviewed by professional coders and the provider's coding decisions were found to accurately represent that Mr. Troxel had received PrEP Required Services, which are preventive in nature.

36. When Mr. Troxel told Quantum his providers had used the correct codes and would not change the codes at Quantum's direction, Quantum continued to insist UMR was not required to cover the services.

37. Although Mr. Troxel had already challenged this denial through UMR's designated "care coordinator" Quantum, on October 19, 2022, Mr. Troxel filed a formal appeal letter with UMR and his employer's benefits department disputing UMR's failure to provide first-dollar coverage for PrEP Required Services.

38. Mr. Troxel's appeal letter clearly identified office visits and lab services he received for the purpose of filling or refilling a PrEP prescription. Specifically, his letter identified visits in March 2021, June 2021, September 2021, April 2022, July 2022, and October 2022 where UMR failed to provide first-dollar coverage.

39. Despite informally communicating with Mr. Troxel about the situation, Quantum and UMR did not issue a formal decision in response to Mr. Troxel's letter.

40. On April 14, 2023, after Quantum failed to issue a decision regarding his previous letter, Mr. Troxel again appealed UMR's claim denials for dates of service from March 2021 to October 2022.

41. On April 28, 2023, Quantum upheld all of UMR's claims decisions and sent five different denial letters.

42. Quantum's first denial letter denied the appeal for PrEP-related lab tests "on 03/04/2021 Through 09/17/2021" as untimely. This denial letter stated: "This is the final determination as the plan's internal appeal process has been exhausted."

43. Quantum's second denial letter denied the appeal for PrEP-related lab tests "on 06/02/2021" as untimely. This denial letter also stated: "This is the final determination as the plan's internal appeal process has been exhausted."

44. Quantum's third denial letter denied the appeal for PrEP-related office visits on "06/02/2021 Through 10/07/2022" on the merits. This letter stated the visits "cannot be covered as a preventive service."

45. Quantum's fourth denial letter denied PrEP-related lab tests "on 03/04/2021 Through 07/06/2022" on the merits. This letter stated the services "cannot be covered as a preventive service."

46. Quantum's fifth denial letter denied PrEP-related lab tests "on 04/04/2022 Through 10/13/2022" on the merits. This letter stated the services "cannot be covered as a preventive service."

47. None of these denial letters addressed Mr. Troxel's appeal of UMR's failure to provide first-dollar coverage for the office visit received on March 4, 2021.

48. None of these denial letters responded to the substance of Mr. Troxel's appeal, which pointed out UMR's obligation to provide first-dollar coverage consistent with federal law. Instead, the denials on the merits contained only conclusory assertions that the services were not preventive.

49. Moreover, none of these denial decisions asserted that the visits were coded incorrectly, as Quantum's representatives had previously asserted in about October 2022.

50. With respect to the three denials on substantive grounds, Mr. Troxel filed a second-level appeal on May 17, 2023. Quantum denied each second-level appeal on May 30, 2023. These three decisions simply restated language identical to the first-level appeal denial letters and did not respond to any of Mr. Troxel's points about how the

services are preventive in nature and required to be covered by federal law. These letters stated that Mr. Troxel exhausted the plan's internal appeal process.

51. This chart summarizes the dates of PrEP Required Services Mr. Troxel received and Quantum's responses on appeal for fully exhausted claims:

| Date of Service | Type of Service | First-Level Appeal Denial Reason | Second-Level Appeal Denial Reason |
|---|---|---|---|
| 03/04/2021 | Office Visit | No reason given | No reason given |
| 03/04/2021 | Labs | Some labs denied as untimely, others denied as not preventive | Not preventive |
| 06/02/2021 | Office Visit | Not preventive | Not preventive |
| 06/02/2021 | Labs | Some labs denied as untimely, others denied as not preventive | Not preventive |
| 09/17/2021 | Office Visit | Not preventive | Not preventive |
| 09/17/2021 | Labs | Some labs denied as untimely, others denied as not preventive | Not preventive |
| 04/01/2022 | Office Visit | Not preventive | Not preventive |
| 04/04/2022 | Labs | Not preventive | Not preventive |
| 07/01/2022 | Office Visit | Not preventive | Not preventive |
| 07/06/2022 | Labs | Not preventive | Not preventive |
| 10/07/2022 | Office Visit | Not preventive | Not preventive |
| 10/13/2022 | Labs | Not preventive | Not preventive |

52. Mr. Troxel has exhausted all internal appeal requirements for appeals of PrEP Required Services he received from March 2021 through October 2022.

11

53. UMR and Quantum have waived all coverage defenses they did not raise in the internal appeals process.

54. Quantum failed to follow reasonable claims procedures and inconsistently applied plan terms by denying some appeals as untimely, considering appeals from the same dates but denying those services as not preventive, and by disregarding the office visit from March 4, 2021 that was appealed by Mr. Troxel. This amounts to a failure to provide a full and fair review of Mr. Troxel's claims.

## V. CLASS ACTION ALLEGATIONS

55. Mr. Troxel seeks to bring this action under Federal Rule of Civil Procedure 23 on behalf of the following class (the "Class"):

> All individuals enrolled in an employer-sponsored, non-grandfathered ERISA plan with benefits administered by UMR or Quantum who submitted claims for PrEP Required Services provided on or after June 30, 2020 and did not receive full, first-dollar coverage without cost-sharing for those services.

56. There are millions of individuals with benefits administered by UMR, which is the largest third-party administrator in the United States and serves over 5 million members. The number of Class members is likely in the thousands and is so large that joinder is impracticable.

57. Common questions of law and fact predominate over any questions affecting individual Class members, including without limitation:

　a. Whether UMR fails to cover PrEP Required Services without cost-sharing;

　b. Whether Quantum Health fails to cover PrEP Required Services without cost-sharing;

    c. Whether PrEP Required Services must be covered without cost sharing under ERISA; and

    d. Whether UMR and Quantum Health breached their fiduciary obligations to insureds by processing and adjudicating claims in a manner that denied full coverage without cost-sharing.

58. Mr. Troxel's claims are typical of the Class because UMR and Quantum denied first-dollar coverage for PrEP Required Services he received.

59. Mr. Troxel will fairly and adequately represent the members of each Class and has retained counsel who are competent and experienced in class action and complex litigation.

60. Mr. Troxel is unaware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The Class members are all identifiable through Defendants' own claims records.

61. By failing to cover PrEP Required Services, UMR and Quantum Health are violating ERISA, which applies to all Class members' employer-sponsored health plans. Accordingly, any differences between Class member plans are immaterial to this dispute because Defendants have violated the Class's substantive rights to preventive care coverage guaranteed by ERISA.

62. The Class satisfies the requirements for certification under Rule 23(b)(1) because inconsistent or varying adjudications would create incompatible standards of conduct for UMR and Quantum. UMR and Quantum are obligated to provide enrollees of plans they administer consistent benefit determinations that comply with ERISA.

63. The Class satisfies the requirements for certification under Rule 23(b)(2) because UMR and Quantum have acted or refused to act on grounds that apply generally to the Class. Namely, UMR and Quantum have failed to cover PrEP Required Services without cost-sharing through their claims administration and appeals processes. As third-party administrators exercising discretionary authority over benefit determinations, UMR and Quantum are fiduciaries responsible for following ERISA and the ACA with respect to the Class members' plans. By failing to operate plans in compliance with those federal laws, UMR and Quantum have breached their fiduciary obligations under ERISA to protect the rights of the Class with respect to PrEP Required Services.

64. The Class satisfies the requirements for certification under Rule 23(b)(3). The questions of law or fact concerning UMR and Quantum's failure to fully cover PrEP Required Services predominate over questions affecting only individual Class members. A class action is the superior method of adjudication, as compared to other available methods, because the services at issue have a cost that is likely too low to justify litigation on an individual basis for most Class members. Additionally, there is unfair stigma associated with HIV and HIV prevention and some Class members may be hesitant to bring a lawsuit to vindicate their legally protected rights to preventive care coverage as a result.

## VI.   CAUSES OF ACTION

### COUNT I
### CLAIM FOR BENEFITS DUE
### UNDER ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

65. Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

66. ERISA allows participants to recover benefits owed to them and enforce their rights under the terms of their plan. 29 U.S.C. § 1132(a)(1)(B).

67. Plaintiff and the Class did not receive full coverage, without cost-sharing, for PrEP Required Services. Under ERISA, Defendants were required to cover those services without cost-sharing.

68. Plaintiff and the Class are entitled to payment of benefits due for PrEP Required Services they received, plus attorneys' fees, costs, and litigation expenses under 29 U.S.C. § 1132(g).

## COUNT II
## CLARIFICATION OF RIGHTS TO FUTURE BENEFITS
## UNDER ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

69. Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

70. ERISA allows participants to clarify their rights to future benefits. 29 U.S.C. § 1132(a)(1)(B).

71. Plaintiff continues to receive PrEP Required Services. These services must be covered by Defendants without cost-sharing under ERISA and the ACA on an ongoing basis.

72. Accordingly, Plaintiff and the Class are entitled to a judicial determination clarifying that Defendants must cover PrEP Required Services without cost sharing, plus attorneys' fees, costs, and litigation expenses under 29 U.S.C. § 1132(g).

# COUNT III
## CLAIM FOR EQUITABLE RELIEF FOR BREACH OF FIDUCIARY DUTIES UNDER ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

73. Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

74. At all relevant times, Defendants were fiduciaries of the ERISA plans they administer under 29 U.S.C. § 1001(21)(A).

75. As fiduciaries, Defendants are required to discharge their duties in the interests of the participants and beneficiaries and in accordance with ERISA.

76. When processing claims and adjudicating claim appeals for PrEP Required Services, Defendants fail to recognize those services as preventive care and fail to provide full coverage without cost sharing.

77. By administering a claims process and claims appeals process that fail to cover PrEP Required Services, Defendants have violated the following fiduciary duties:

   a. the duty of prudence, by failing to administer health plans in accordance with the requirements of ERISA, 29 U.S.C. § 1104(a)(1)(B);

   b. the duty of loyalty, by failing to act in the interest of plan participants and their beneficiaries with the exclusive purpose of providing benefits, 29 U.S.C. § 1104(a)(1)(A); and

   c. the duty to follow plan documents, to the extent those documents are consistent with ERISA, by failing to provide for preventive care in accordance with plan terms, 29 U.S.C. § 1104(a)(1)(D).

78. As a result of these fiduciary breaches, Plaintiff and the Class are entitled to equitable relief in the form of an injunction requiring Defendants to comply with ERISA and the ACA by treating PrEP Required Services as preventive care on an ongoing basis and to reverse any claims decisions that did not provide full coverage without cost-sharing for PrEP Required Services.

79. In addition, Plaintiff and the Class are entitled to equitable monetary relief in the form of disgorgement of profits, restitution, and surcharge, to the extent such remedies are unavailable for their claims under 29 U.S.C. § 1132(a)(1)(B), plus attorneys' fees, costs, and litigation expenses under 29 U.S.C. § 1132(g).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Prays for Judgment as follows:

A. Declare that ERISA, as amended by the ACA, requires Defendants to provide full coverage without cost-sharing for PrEP Required Services as preventive care;

B. Order UMR and Quantum to correct any claims decisions that did not provide full coverage without cost-sharing for PrEP Required Services from June 30, 2020 to the date of entry of judgment;

C. Order Defendants to provide coverage without cost-sharing for all insurance claims submitted for PrEP Required Services from June 30, 2020 to the date of entry of judgment;

D. Declare that Defendants breached their fiduciary duties to Plaintiff and the Class by failing to provide full coverage without cost-sharing of PrEP Required Services in violation of ERISA;

E. Order Defendants to comply with ERISA for all future claims for PrEP Required Services;

F. Award to the Plaintiff and the Class their attorneys' fees, costs, and expenses under ERISA, 29 U.S.C. § 1132(g), Federal Rule of Civil Procedure 23(h), the common fund doctrine, or as otherwise provided by law;

G. All other relief as the Court deems just and equitable.

Dated:  August 16, 2023

**s/ Derek C. Waller**
David W. Asp, MN #0344850
Kristen G. Marttila, MN #0346007
Derek C. Waller, MN #0401120
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN  55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
dwasp@locklaw.com
kgmarttila@locklaw.com
dcwaller@locklaw.com

**ATTORNEYS FOR PLAINTIFF**