UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

----------------------------------------------------------------

|  |  |
|---|---|
| Luke Troxel, individually and on behalf of all others similarly situated, | ) File No. 23-cv-2521 ) (JWB/TNL) ) |
| Plaintiffs, | ) Courtroom 3B ) St. Paul, Minnesota ) January 24, 2024 |
| vs. | ) 2:01 p.m. ) |
| UMR, Inc. And Quantum Health, Inc., | ) ) |
| Defendants. | |

----------------------------------------------------------------

BEFORE THE HONORABLE JERRY W. BLACKWELL
UNITED STATES DISTRICT COURT JUDGE
**(CIVIL MOTIONS HEARING)**

Proceedings reported by certified stenographer; transcript produced with computer.

LYNNE M. KRENZ, RMR, CRR, CRC
(651) 848-1226

**APPEARANCES**:

| | |
|---|---|
| For the Plaintiffs: | Lockridge Grindal Nauen P.L.L.P.<br>David Asp, ESQ.<br>Derek Waller, ESQ.<br>100 Washington Avenue South<br>Suite 2200<br>Minneapolis, MN 554001 |
| For Defendant UMR: | Dorsey & Whitney<br>Nicholas Pappas, ESQ.<br>50 South 6th Street<br>Suite 1500<br>Minneapolis, MN 55402 |
| For the Defendant<br>Quantum Health: | Taft Stettinius & Hollister, LLP<br>Abby Sunberg, ESQ.<br>Paul Shapiro, ESQ.<br>2200 IDS Center<br>80 South Eighth Street<br>Mpls, MN 55402 |
| Court Reporter: | Lynne M. Krenz, RMR, CRR, CRC<br>Suite 146<br>316 North Robert Street<br>St. Paul, Minnesota 55101 |

**P R O C E E D I N G S**

**IN OPEN COURT.**

THE COURT:  Please be seated.

And could I have the parties to please note their appearances, starting with plaintiffs' counsel.

MR. PAPPAS:  Good afternoon, Your Honor.  Derek Waller on behalf of Plaintiff Luke Troxel, from Lockridge Grindal Nauen and with my colleague, David Asp.

And our client, Mr. Troxel, is here with us in the courtroom today.

THE COURT:  All right.  Good afternoon.

And then for UMR?

MR. PAPPAS:  Good afternoon, Your Honor.  Nicholas Pappas of Dorsey and Whitney for Defendant UMR.

THE COURT:  Good afternoon, Mr. Pappas.  And I presume you'll be arguing then?

MR. PAPPAS:  Yes, Your Honor.

THE COURT:  All right.  And for Quantum?

MR. SHAPIRO:  Good afternoon, Your Honor.  Paul Shapiro from Taft Stettinius & Hollister, appearing with my colleague Abby Sunberg on behalf of Quantum Health.

THE COURT:  All right.  So we are here on two motions to dismiss for Defendants UMR and Quantum Health.

Why don't I start with UMR to come up to the podium since you've got kind of a universal objection based

upon standing and as well as you're taking on Count 3 of the complaint.

So let me first hear you out on why you think they're in standing.

MR. PAPPAS: Your Honor, the standing questions and the statutory questions are overlapping but I can start with standing.

Your Honor, the requirements of standing are injury in fact that is fairly traceable to defendant's conduct that is likely to be redressed.

We skip over injury in fact, Your Honor, we don't contest that at this time, but the injuries alleged here are neither fairly traceable nor redressable.

Quantum's final denial of Troxel's appeal is not fairly traceable to UMR's initial claims processing because --

THE COURT: So even here, presuming that standing is decided on a facial basis, that is what's on the face of the complaint, even with respect to the face of the complaint that UMR's position is that Quantum did it.

MR. PAPPAS: That's correct, Your Honor.

When we say -- we agree it's a facial challenge, but we also agree that on the face of the complaint there's reference to the plan and various other activities but we -- the -- only document beyond the pleading itself is the plan

that I think required -- is required for the Court to look at to determine the traceability and redressability issues, Your Honor.

And so, going back to traceability, Your Honor. Troxel completed two separate independent mandatory appeals before he sued. His alleged injury is a result, we say, of independent actions by Quantum as the final claims administrator here.

And final is critically important here, Your Honor. It's final as to the plan and benefits due under the plan, which is what the Court, we submit, should be looking at here.

THE COURT: But didn't Troxel have, under the terms of the plan itself, final discretionary authority to determine if the claim is initially payable under the plan?

MR. PAPPAS: That's what the plan says, Your Honor. But the words the Court just said is critically important and I think, with respect, our adversaries really gloss over that critical word "initial" and the plan is very clear that UMR has authority to determine the initial claim and whether the initial claim is payable. That's what the plan actually says.

And but that -- the plan says that that initial determination is reviewable on appeal. And that is critically important because -- and this gets back to the

statutory question and how it overlaps with the standing question.

The relevant question under ERISA is whether there are -- there is a claim for benefits due to plaintiff under the plan.  That question is not answered in the initial processing of the claim.  It is only an initial determination, which is conditional.  It is not final by definition as to what is due under the plan.  And that's what ERISA is concerned about.

THE COURT:  So how would UMR, I'm just curious, and maybe this doesn't go to the issues on a motion to dismiss, but how would UMR ever be accountable for how it discharges its duty as long as there's Quantum that serves as -- in an appellate review body that, in essence, it doesn't matter what UMR did, as long as the final assessments are made by Quantum, no harm, no foul, because Quantum did it?

MR. PAPPAS:  Well, Your Honor, accountability is critical and it's built into the statute.  It's hardwired into the statute.  Accountability is mandated by virtue of the very internal appeals, the initial determination because it's reviewable through these --

THE COURT:  Mr. Pappas, I'm asking for accountability for UMR, not Quantum or the process in general, but UMR in terms how UMR discharge its duties.  How

would it be held accountable to a claim that as long as an appeal is filed, wouldn't you always be able to say, it wasn't our final determination, it was the review body that did it?

MR. PAPPAS:  When you say -- well, Your Honor, accountable, at least as we're thinking about it, means is is UMR going to reach the correct result?

The answer to that, it becomes accountable and it can be corrected and changed by Quantum.  And let's say, you know -- and further, if the plaintiff still is aggrieved, the plaintiff has an action in court against Quantum.

If the Court will were to determine that Quantum made an error on that appeal, UMR would be bound by that, both by virtue of the terms of the plan and under the law. So UMR would be bound by whatever the Court would determine.

And the plaintiff's, you know, assertion his brief was, well, UMR can never be accountable because it can keep doing the same error over and over again.  I submit, Your Honor, that's simply not fathomable, it's not correct legally or factually.

THE COURT:  So why don't you, counsel, go ahead and move on to your other argument.

I hear your argument on standing.  So move on to your claim on Count 3.

MR. PAPPAS:  Right.  Your Honor, we would submit that this -- there's one legal issue that is dispositive of this entire case, it's the statutory issue.

The constitutional issues, of course, are there, which the Court would have to reach if you ruled against UMR in the statutory issues.  But the Court can simply rule on a very simple legal issue that is dispositive and controlled by, we think, governing Eighth Circuit law and certainly persuasive noncircuit law.

That issue is whether UMR is a proper defendant under ERISA Section 502(a)(1)(B) because it has final discretionary authority to decide a claim for benefits due to plaintiff under the terms of the plan.

We submit that there's only one answer to that question and the all the case law points in the same direction.  And because UMR's not a proper party under that standard, we submit the motion to dismiss should be granted.

And we start with the words of the statute, Your Honor, which I think is where the Court will certainly start.

502(a)(1)(B) of ERISA creates a civil action, quote, "To recover benefits due to him under the terms of the plan."  Close quote.

That is what courts call a claim for benefits.  And that -- that term "claim for benefits due" is used by

all the cases that we've cited.  All the Eighth Circuit cases, all the district court cases, claim for benefits due.

So the critical statutory question is, what benefits are due?  That's not determined by what we said earlier, the initial processing of the claim.

And that's really the critical question, because the -- that what the plaintiffs have said, Your Honor, is they, I think, gloss over this distinction between claims and claims for benefits due.  And they -- they assert, Your Honor, that, well, Quantum has authority over claims, which of course is correct, but Quantum does not have the final authority over the benefits due under the plan.  And we submit that that's what the courts are talking about when they assert of the standards.

Now, the Eighth Circuit cases we've cited, Your Honor, we think make this very clear.  The *Lays* case, the *Brown* case, and a district court case in Minnesota, *Genosky* case.  All of these cases use the standard, the same standard, right?  It's whether there are benefits due.

And the party that decides, and determines, and is a final -- has final authority over whether benefits are due, the Court's have said is the proper party.  That's not UMR.

And the thing that's not directly and concretely addressed in the Eighth Circuit or in the district courts in

Minnesota is what happens when the plan divides the responsibility between two different administrators, as is the case here, between the initial claim processer and appeals? In that case, how do you apply this standard?

And we submit, Your Honor, and there's a dispute among the parties, all the courts are applying the same standard. All the courts, all the cases we've cited. The same standard is, who controls the final decision? That's what, as a practical matter, the district court should want -- should be concerned with.

The district court should be concerned with the final decision, not some preliminary decision that is subject to review by the plan itself.

And so, Your Honor, we commend the Court to look at these out-of-circuit cases as highly persuasive. We point to *Smith versus Blue Cross Blue Shield*. *Greenwald versus Liberty Life*. *Briglia versus Horizon*. *Easter versus Cayuga*. *Gallagher versus Empire*. These courts all come to the same conclusion on a factual record like the one we have on here.

You have an initial claims processer who sued in district court and the court says, you're not a proper party because your decisions are reviewable by somebody else and that somebody else is the proper party.

So, Your Honor, we think -- we think all of those

cases are persuasive.

Plaintiff dismisses these cases using some hyperbolic language as, you know, we're proposing a sweeping rule that the entity that last touched the claim can be sued.  They called this a hot potato rule of liability.  And they say that these cases are contrary to the Eighth Circuit rule.

We ask the Court to just dismiss that rhetoric.  It's not correct.  It's simply incorrect.

THE COURT:  Mr. Pappas, I hear your arguments.  I follow them.  I -- we've read your papers.  We've read your cases.

Do you want to talk about Count 3, the claim for equitable relief for breach of fiduciary duties?

MR. PAPPAS:  Your Honor, that -- we stand on our papers on that count.  We think it's quite clear that the plaintiffs have not alleged anything to support a claim for breach of fiduciary duty.  It is different from the claim for benefits under governing authority in this Court.  The claim, therefore, should be dismissed.

I know that my colleague for Quantum is going to focus on that with you, so I'm not going to belabor that point, Your Honor.

THE COURT:  Well, let me -- thank you.  Let me hear then from Quantum, since Mr. Pappas, according to you,

they did it.

Is it Mr. Shapiro?

MR. SHAPIRO:  Yes, Your Honor.

THE COURT:  Do you agree with Mr. Pappas that since Quantum has the duty to review any appeal and makes the final call that Quantum will be the only culpable party to the extent there is one and not UMR?

MR. SHAPIRO:  Your Honor, we haven't taken a position on that question in the papers.

THE COURT:  Well, I'm asking you now.  Are you going to take one or you just don't have an opinion?

MR. SHAPIRO:  Your Honor, we think that both parties, both named defendants are properly in the case and should remain so if the Court denies the Rule 12 motions.

THE COURT:  Well, how can that be if you, that is Quantum, is making the final call and whatever call UMR makes is interim, preliminary, temporary, and call it whatever word you want to use, how could you be of the view that both parties are properly in the case if what Mr. Pappas tells me is fair and true according to the law?

MR. SHAPIRO:  Your Honor, like I said, we simply have not advanced an argument on that point.  And I'm not authorized here to make -- to take a position.

THE COURT:  All right.

MR. SHAPIRO: And I apologize to the Court for not responding directly to that question, but I have not -- I don't have that authorization.

THE COURT: So do you want to go to Count 3 then?

MR. SHAPIRO: Yes, Your Honor.

On Count 3, Your Honor, the Court should grant Quantum's partial motion to dismiss because Mr. Troxel's claim under 502(a)(3) for breach of fiduciary duty is entirely duplicative of his claim for denial of benefits under 502(a)(1)(B).

And this issue's been covered extensively in the briefings by all the parties, so I'll just make a few short observation.

Now, in a nutshell, the complaint alleges that Quantum was wrong to deny Mr. Troxel's claim, appeal of his claim for benefit denial. It's that simple. And that straightforward claim, Your Honor, is exactly what (a)(1)(B) is denied to remedy.

This Court knows well that those kinds of (a)(1)(B) benefit denial claims are filed in this district practically every single day.

Here, however, in addition to that straightforward theory, plaintiff tosses in an (a)(3) breach of fiduciary duty theory but the Eighth Circuit says you can do that only, only if the two claims are not duplicative of one

another.

And in order for an (a)(3) claim to not be duplicative of an (a)(1)(B) claim they need to rest on different theories.  They need -- they need a theory and allegations that focus on the claim process, not just on the claim denial.  That's what the Eighth Circuit said in *Jones* 856 F.3d at 547.  And that is what the complaint here does not contain.

THE COURT:  Isn't the real danger here that we end up in a universe where there's an argument for double recovery for essentially the same thing?  And can't I address that somewhere down the line after there's been some discovery and then I will know for sure whether these are duplicative claims or alternative claims?

MR. SHAPIRO:  Well, in order to even get to that stage, Your Honor, I think what the Eighth Circuit said in *Jones* and *Silva*, certainly the logic of the Supreme Court case that serve as the background of those two cases, suggests that the complaint needs plausible, factual allegations that identify a defect, flaw, conflict of some kind in the claim process in order to make the claims not duplicative.

So our argument is that, yes, in theory they could plead the claims in the alternative, just like you can plead a breach of contract claim, and an unjust enrichment claim,

and decide, you know, down the road which avenue is most appropriate.

THE COURT:  Well, isn't it plausible that the denial of benefits claims focuses on a contractual failure, and the breach of fiduciary duty claim relates to deviations from the process as prescribed by ERISA?

MR. SHAPIRO:  Well, and that's -- those are not the theories that the complaint advances, Your Honor.  The complaint advances a fiduciary breach theory.  That is, Quantum administered a claim process whose outcome was the denial of his claim.  And on that basis alone, the plaintiff alleges that Quantum breached its fiduciary duty.

And if that's acceptable as a plausible theory of liability, Your Honor, then there is no limiting principle of the kind that the Eighth Circuit in *Jones* said is required.  Every (a)(1)(B) claim can then morph into an (a)(3) claim and proceed to discovery because the -- and that's, I think, what the Eighth Circuit has expressly counseled against.

THE COURT:  All right.  Thank you.

MR. SHAPIRO:  All right.  Thank you, Your Honor.

THE COURT:  Let me hear now from the plaintiffs. Is it Mr. Waller?

MR. WALLER:  Mr. Waller, yes.

THE COURT:  Come on up.

Mr. Waller, you can take each of the defendants' arguments in turn, but if you would start with UMR since it sounds, from what I've heard this afternoon, that on the standing issue you're barking up the wrong tree that UMR didn't have the final say on this issue and only Quantum did and that's who has standing to be sued.  That's who you have standing to sue.

MR. WALLER:  I would disagree with that characterization, Your Honor, and I think UMR is a proper defendant here for three reasons.

First, UMR has authority to pay plan benefits under the terms of the plan.  And we know that because UMR actually did pay benefits for Mr. Troxel's annual preventive care visit.  For example, it sent him explanations of benefits and identified what it would pay.

So UMR is actually the only party in this case today who we know for a fact has paid plan -- paid benefits from plan funds.

And that's important, Your Honor, because that's what the test, as it's been distilled in the Eighth Circuit, and I think the *Slayhi versus High-Tech Institute* case is persuasive on that from this district that what matters is which defendant has authority to pay benefits from plan funds.  And here, UMR has that authority.  If it had approved those benefits, that would have been final, binding

on the plan, and on everyone involved.

Now, the second point goes to their argument about that the appeal changes things because Quantum is there for the appeal.

There's nothing in the plan language that strips power away from UMR after an appeal is filed.

So while Quantum is deciding the appeal, there's nothing in the plan language that says Quantum suddenly has the sole authority or that it has removed the discretionary authority that UMR has under the terms of the plan.

And I think the best case on this issue, Your Honor, is the *Duncan verus Jack Henry & Associates* case. That's out of the Western District of Missouri. And there we had a very similar situation. That's actually the only case where we have multiple third-party administrators, each exercising some sort of discretionary authority. And in that case it was Quantum and UMR. UMR was acting as the claims administrator and UMR had delegated some specific precertification responsibilities to Quantum.

Now, Quantum made an initial precertification decision that denied benefits in that case. That was appealed through the process. And the Court found that both Quantum and UMR were proper defendants in that case because they had made the decision of the claim that was at issue.

The third point I'd like to make, Your Honor, is that a lot of the cases cited by UMR are looking at different scenarios, which is where there's a plan administrator or a claims administrator who retains ultimate discretionary authority to vote up or down on every claim for benefits.

So this is the *Greenwald* case that they cited. That was a disability benefits case. And there, the employer in that case was Wells Fargo. That committee reviewed the recommendations made by the third-party administrator and they actually adopted those recommendations. But they held the ultimate authority. So the Court found they were the proper defendant.

Now, the plan language here on page 4 of the summary plan description says that the plan administrator has final discretion authority. It seems to contemplate a single plan administrator.

And then if you go deeper into the plan, I think it's around page 93, we find that there's actually three that are exercising some sort of authority at different points in the process.

We would submit, Your Honor, that because those are all -- they can all bind the plan, they can all make those final decisions, they're all both proper defendants in this case.

THE COURT:  So why don't you move on to the other argument on their motions to dismiss Count 3.

MR. WALLER:  Yes, Your Honor.

I think where this has come down to is that -- I heard Quantum's counsel mention that there aren't enough allegations to allege a process problem.

And I think Your Honor does not need to decide whether every (a)(1)(B) claim could simply be brought as an (a)(3) claim because here we have factual allegations that support that there's something wrong with the process.

And I'd like to direct the Court to those allegations in our complaint.

First, these denials were not one-off claims errors.  Our client had numerous claims denied over the course of two years.  That's paragraphs 26 and 51 of the complaint.  I think the fact that he kept running into this problem every three months indicates a pattern.

Second, both UMR and Quantum here knew that the services were for PrEP-related -- were PrEP related because he told the defendants that multiple times through customer service reps, through his employer's benefits department, who we understand communicated with the defendants here, and through the formal appeals proses.  That's paragraphs 32 through 38 of our complaint.

Third, we know -- we've alleged that the claims

here were properly coded, meaning that there weren't any claims errors. And that claim is plausible because the provider specifically conducted a coding review and confirmed as much, so that's paragraph 35 of our complaint.

So we know that even where the codes are accurate, there's some process going on here that's failing to recognize those as preventive care.

Fourth, we know that UMR had a process in place for the annual preventative visit. And I think that this is actually -- this actually turns in our favor because we're not alleging that they didn't cover any preventative care benefits across the board, we're saying that they didn't recognize PrEP-related care as preventative.

And the fact that they had a process in place, they were able to figure that out for the annual preventative visit suggests -- and then there wasn't that corresponding process in place for the PrEP-related services, and that's in paragraph 25 of our complaint.

The last point I'd like to make here that I think shows a process problem is that -- is the nature of the breach.

This is an express statutory requirement. ERISA requires this care to be covered as preventative and there's no individualized determination, like a medical necessity determination where they're disputing whether this

particular kind of treatment was necessary and appropriate, that's kind of an individualized determination usually. Here this is fairly straightforward. We're seeing that they have a claims process that simply isn't recognizing what this care is and isn't covering it as such.

And I think all of those allegations support that there's a problem with the process that I believe both sides acknowledge is allowed to move forward under *Jones*.

And I'm -- the Court is well aware of the pleadings standard here, but the Eighth Circuit has cautioned that in *Braden* that this is the exact kind of situation where a plaintiff who doesn't have all the inside information in the process should be allowed to move forward with plausible allegations like we have here. And I think what Your Honor pointed out is there could be some discovery on this to find out whether they were actually, in fact, duplicative.

From what we can see in the process, it appears to be a process problem. And if they were systematically not covering these claims in violation of a statutory requirement, that breaches their fiduciary duty under ERISA.

And unless the Court has further questions, I think that addresses the main argument here.

THE COURT:  Well, thank you very much, counsel.

Let me give Mr. Waller [sic] a chance to briefly

respond.

Did I say Mr. Waller?  You're Mr. Waller.

MR. WALLER:  Yes.

THE COURT:  Mr. Pappas, a chance to briefly respond.

MR. PAPPAS:  Thank you, Your Honor.

On the -- excuse me, on Mr. Waller's point that the plan benefits -- if the party that pays plan benefits from plan funds is enough, that's their theory.  And we submit, Your Honor, that's just wrong.  It's just flat out incorrect.  He cites the *Slayhi* case.  The *Slayhi* case does not support that theory.  It does not support that premise.

Simply paying plan benefits ignores the divided structure of the processing of the claims here where one party, UMR, processes the initial claim and then another party, Quantum, conducts the appeals and makes the final decision for the plan as a whole.  That's what's relevant.

Counsel and plaintiff simply ignore the cases and they dismiss the out-of-circuit cases which are directly on point as being contrary to Eighth Circuit law.

Your Honor, we submit they're not contrary. They're perfectly consistent with Eighth Circuit law and we ask the Court to review those and find them very persuasive as we do.

The -- counsel stated that nothing in the plan divest UMR from authority once there is an appeal. That's, again, is not correct, Your Honor. We submit -- the plans are in the record. Counsel even cited page 93. That's exactly the page we cite. Page 93 says that when there's an appeal that Quantum has final discretionary authority, not UMR. And there are other references to that in the plan, Your Honor, but the one at page 93 is, I think the clearest.

Your Honor, the other -- another point counsel made was that Quantum and UMR are proper parties. They cite to the -- I think it's a Missouri case, *Duncan*.

Your Honor, we discuss that in our papers. The *Duncan* case is a very different context that involved what's called care coordination where in that case, under that plan, two different administrators are involved in coordinating care and responsible for coordinating care.

There was no similar situation where you have literally one determination that is reviewable by the other party and where the plan language expressly makes clear that that other party makes the final decision.

So, the *Duncan* case is distinguishable. It is not support for the idea that you can have two proper parties on a claim for benefits. The care coordination situation is simply not an analogous situation.

THE COURT: So why don't you wrap it up, Mr. Pappas.

MR. PAPPAS: Your Honor, the -- the argument that that UMR and Quantum did not recognize PrEP as a covered services is again, incorrect. Their own complaint makes clear that it was covered when it was properly coded.

The coding issue, Your Honor, is simply not an issue that is pled in this complaint. And that -- if that's their dispute, then they haven't -- they haven't pled that and they certainly can't plead that PrEP is not a covered service. The plan makes clear that in appropriate circumstances -- and there was one example that they described that should be done.

And one last point, Your Honor. I neglected to point out an important point in response to Your Honor's first point about standing.

Mr. Troxel is no longer a plan participant by his own admission. We only learned that in their -- from their opposition papers. It's not in their complaint. But since he's no longer a plan participant, that's another ground why where there's no standing in this case.

Thank you, Your Honor.

THE COURT: Thank you, Mr. Pappas.

Mr. Shapiro, do you want to have one last word?

MR. SHAPIRO: Very briefly, Your Honor, if I may.

Your Honor, back to Count 3.  My friend on the other said made the point that you don't need to reach the question of whether every (a)(1)(B) claim could then be morphed into an (a)(3) claim under plaintiffs' theory here.

And I just flat disagree with that, because under their theory it's as if a complaint pleads allegations that the plaintiff was, for example, disabled.  And the fact that the claim process resulted in the denial of that disability claim must indicate that there's something wrong with the claim process, thereby giving rise to a claim under 502(a)(3).

I think that's just exactly what (a)(1)(B) is for.  That's exactly what the Eighth Circuit in *Jones* and *Silva*, and the logic of the Supreme Court court cases that predated it counseled against.

THE COURT:  All right.  Thank you, Mr. Shapiro.

MR. SHAPIRO:  Thank you.

THE COURT:  So, Mr. Waller, last word?

MR. WALLER:  Very briefly, Your Honor.

I would like to respond to the standing argument regarding our plaintiff who has gotten a new job, who is no longer part of the plan.

We would submit to the Court that ultimately he won't be able to recover forward-looking relief, so that's Count 2 of our complaint.  Because he's no longer a member

of that plan, you need -- to get forward-looking relief you need to show that you would be imminently harmed.

So if Count 2 is dismissed, we would not dispute that, Your Honor.

THE COURT:  Well, are you going to withdraw Count 2?  If your client you feel is not entitled to it and you've plead it, are you going to withdraw it?

MR. WALLER:  If we amend the complaint, we would certainly do that.

I can withdraw that count standing here today if Your Honor would accept that.  Otherwise, you know, with an amendment we would not plead Count 2, which is solely looking for forward-looking relief.

THE COURT:  Right.

MR. WALLER:  The second point I'd like to make briefly is just in response to the point that the plan language very clearly only assigns Quantum the authority once an appeal has been filed.

I would say that if the plan wanted to retain that authority to Quantum only or be very clear about it, there are plans that do that.

A lot of the cases they've cited have language that reference sole authority or -- and this plan itself says that the employer retains authority for eligibility and benefits.

There is no such clear language like that with respect to Quantum to say that Quantum suddenly has sole authority as soon as the beneficiary that files an appeal.

So I would just say that if -- if that was what the plan intended to do, the plan could certainly have said that and it could have said it clearly.

So that's all I have, Your Honor.

THE COURT:  All right.  Thank you.

Thank both sides, all three sides, I suppose, for both all of your arguments and for your preparation for today's hearings.

I've heard you out, I've read your papers, and read the cases that you referenced and I am prepared to make my ruling today from the bench so that you will leave and know what it is.

Plaintiff Troxel alleges that UMR and Quantum administered his employer-sponsored health benefit plan.

That UMR and Quantum administrated and each refused to cover preventative office visits and lab services necessary to obtain and refill his PrEP prescription.

UMR was the initial reviewer of his claims for benefits and Quantum reviewed his claims on appeal.

Troxel alleges that both UMR and Quantum 's failure to cover preventative care services violates the employment -- the Employee Retirement Income Security Act,

ERISA, of 1974.  And also as fiduciaries of the ERISA plans, the administrator breached their fiduciary duties.

Troxel then asserts three counts in the complaint.

Count 1 for a claim for benefits due.

Count 2, clarification of rights to future benefits.

And Count 3, claim for equitable relief for breach of fiduciary duties.

UMR has sought to dismiss all three counts. Quantum then sought to dismiss only Count 3, the fiduciary duty claim.

First, UMR argues that it is not a proper defendant under ERISA due to its limited role in initial claim processing.

UMR similarly argues that Troxel does not have standing to sue UMR, asserting that Troxel's injuries are not fairly traceable to UMR's actions and that UMR is the not the party to address any injuries.

I point out also today in the argument from Mr. Pappas, he pointed out that Mr. Troxel is no longer under the plan, which certainly does impact, you know, Count 2, the clarification of rights to future of benefits, which I'll address towards the end.

I find that Troxel's allegations in his complaint are sufficient to plausibly claim that UMR's actions

directly led to the wrongful denial of benefits establishing a concrete and particularized injury that is fairly traceable to UMR and that relief ordered against UMR would address Troxel's injuries, which meets the requirements for facial standing.

Troxel alleges that the plan gives UMR the final discretionary authority to determine if an initial claim is payable under the terms of the plan, at the complaint paragraph 21.

He also alleges that UMR reviewed Troxel's claims and that for some of them did not provide first-dollar coverage, leaving Troxel responsible for exam and lab service charges. And that's in the complaint too at paragraphs 23 and 26.

Troxel alleges that he has incurred over $1,000 in charges from his provider as a direct result of UMR's failure to provide first-dollar coverage for PrEP-required services. And that's at paragraph 31 in the complaint.

Therefore, Troxel has alleged that UMR, as the first-level claims administrator, played a direct role in the initial denial of benefits for preventative services provided to Troxel under his healthcare plan.

This initial denial by UMR is a key aspect of Troxel's claims because Troxel has alleged a denial of benefits, which are benefits he alleges were due to him in

accordance with law.  That they are directly connected to UMR's actions as to claims administrator.

He has alleged facts that establish standing to sue UMR under ERISA.  His standing is based on alleged injury, that is denial of benefits, which is, as alleged in the complaint, traceable to UMR's conduct and could potentially be redressed by a favorable court decision against UMR.  I don't doubt that I may hear more about this issue on summary judgment, but it proceeds forward for discovery.

I accept plaintiff's allegations as true for motion to dismiss purposes and find they are sufficient to establish standing at this preliminary stage, and that UMR is a properly named defendant.

Therefore, UMR's motion to dismiss on the standing grounds is denied, with an asterisk, which I'll come back to Count 2 of the complaint in a moment.

Both UMR and Quantum move to dismiss Count 3, the breach of fiduciary duty claim.

Both defendants argue that under this claim, under ERISA Section 502(a)(3) is duplicative of the denial of benefits claim under 502(a)(1)(B).

After reviewing the complaint, I find that plaintiff has articulated distinct theories for each claim and not the same theory of liability.

The denial of benefits claim focuses on the contractual failure to provide the promised benefits, while the breach of fiduciary duty claims centers on the alleged failure to administer claims in accordance with ERISA standards, a separate legal issue.

Given the motion to dismiss standard, which is not intended to resolve issues of fact or law but merely test the sufficiency of the complaint, this differentiation, as indicated through the allegations in the complaint, is sufficient at this stage.

Additionally, the Eighth Circuit has allowed plaintiffs to proceed past the pleadings stage with simultaneous claims under sections (a)(1)(B) and (a)(3) in some cases, allowing for alternative theories of liability to at least be pursued.

And I note the *Silva versus Metropolitan Life* case at 762 F.3d 711 is an example of one such case.

And as the Eighth Circuit said in that case at the motion to dismiss stage, it can be challenging for a Court to discern if (a)(1)(B) claims and (a)(3) claims are indeed duplicative rather than alternate, and to determine if one or both could provide adequate relief.

Those determinations are better left for analysis on summary judgment once the claims are more developed. Therefore, it was not improper, which is to say it was

permissible, for Troxel to plead alternative theories under ERISA's distinct enforcement provisions, and Count 3 for breach of fiduciary duties will not be dismissed at this stage.  Thus, both UMR and Quantum's motions to dismiss on this grounds will be denied.

So in summing it all up, Defendant Quantum Health's partial motion to dismiss will be denied as to Count 3.

Defendant UMR's motion to dismiss based upon standing and Count 3 will be denied.

As to Count 2, rather than having the defendants move to dismiss that count, I will ask that the plaintiffs within the next week and a half, by next Friday, just amend the complaint to drop that count.

Again, I'm looking here at Mr. Waller who's nodding his head.

MR. WALLER:  Yes, Your Honor.

THE COURT:  Yes.  All right.  The magic words.

So the transcript of this hearing serves as my official ruling on this particular matter and only a short order will follow restating these final findings.

Now, having said that, anything further from plaintiff?

MR. WALLER:  No, Your Honor.

THE COURT:  From the defendants?

MR. PAPPAS:  Your Honor, with respect, did the Court rule -- also consider the separate argument that UMR made for dismissal on statutory grounds?

I understood the Court's standing argument but didn't hear the Court's ruling on the statutory issues.

THE COURT:  It's on all counts as to dismissal related to standing, that they all are denied.

To be clear, there's nothing -- there's nothing left with respect to standing issue.  I think standing is satisfied based upon the facial kind of reading of the complaint and the allegations of particularized injury that's fairly traceable to the conduct of the defendant, that would be remedied by an affirmative ruling by a Court or jury.

MR. PAPPAS:  Thank you, Your Honor.

THE COURT:  All right.  Mr. Shapiro, anything further?

MR. SHAPIRO:  Nothing from us, Your Honor.  Thank you.

THE COURT:  All right.  Then the Court will stand adjourned.

(Court adjourned at 2:44 p.m.)

                    *          *          *

**REPORTER'S CERTIFICATE**

I certify the foregoing pages of typewritten material constitute a full, true and correct transcript of my original stenograph notes, as they purport to contain, of the proceedings reported by me at the time and place hereinbefore mentioned.

/s/Lynne M. Krenz
Lynne M. Krenz, RMR, CRR, CRC